# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| JASMEET SINGH | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | ) | |

**FILED**

Nov 26, 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

2:25-mj-0175 JDP

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____May 27, 2024_____ in the county of _____Fresno_____ in the _____Eastern_____ District of _____California_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 875(c) | Interstate Communication of Threats of Violence |

This criminal complaint is based on these facts:

See Affidavit of FBI Special Agent Brian Toy, attached hereto and incorporated by reference.

☒ Continued on the attached sheet.

_____/s/ Brian Toy_____
_Complainant's signature_

Special Agent Brian Toy, FBI
_Printed name and title_

Sworn to me and signed via telephone.

Date: ___November 26, 2025___

_Judge's signature_

City and state: ___Sacramento, CA___

Jeremy D. Peterson, U.S. Magistrate Judge
_Printed name and title_

## I.    AFFIDAVIT

I, Brian Toy, being first duly sworn, hereby depose and state as follows:

## II.    INTRODUCTION AND AGENT BACKGROUND

1.    This affidavit is submitted to establish probable cause that on or about May 27, 2024, at approximately 3:58 a.m., within the Eastern District of California, defendant **Jasmeet Singh**, violated 18 U.S.C. § 875(c) by transmitting in interstate or foreign commerce a "communication" containing a threat to injure and kill the person of Victim 1, by making oral threats over the Whatsapp application through an audio and video call.

2.    I am a Special Agent with the FBI, and have been since May 2010.  I graduated from the FBI Academy in Quantico, Virginia in October 2010.  During the Basic Field Training course, I learned the necessary skills, tactics, and techniques needed to perform my investigative duties as an FBI Special Agent.  I also learned how to conduct investigations of criminal activity, execute search and arrest warrants and seize evidence of violations of United States law.  I am currently assigned to the FBI's Sacramento Field Office, Stockton Resident Agency, where I have worked on and participated in a variety of cases; to include violent crime, serial killings, firearms violations, drug violations, murder-for-hire investigations, bank robberies, and extortion investigations.  I have received training and I have gained experience in interviewing and interrogation techniques, arrest procedure, physical surveillance, search warrant applications, the execution of search and seizures, computer evidence seizure and processing, social media analysis, and various other criminal laws and procedures.  I have testified in federal grand juries and executed search and arrest warrants.

3.    This affidavit is intended to show only that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## III.    PROBABLE CAUSE

4.    In order to understand the context of threats made by defendant **Singh** to Victim 1, it is helpful to understand certain aspects of a criminal enterprise based in India known as the Lawrence Bishnoi Gang ("LBG").  FBI investigation of the LBG, as well as extensive investigative reporting, reveals that the leader of the gang is a man named Lawrence Bishnoi who is currently in custody in India.  LBG originated in India but has since had members and associates move to Canada and the

United States and engage in criminal activities on behalf of the gang.  In recent years, U.S. and Canadian law enforcement have investigated LBG members and associates for various crimes, including extortions, shootings, a murder in Canada, the murder of a celebrity in India, and the murder of a politician in India.

5.     The FBI Sacramento office is investigating a number of criminal activities linked to LBG members and associates.  One such criminal activity is a December 2023 incident in which LBG leader Lawrence Bishnoi contacted an extortion victim and threatened his/her safety if the person did not provide payment for his/her continued safety.  LBG members or associates shot the extortion victim's vehicle while it was parked in front of his/her house in order to carry out the threat conveyed by Lawrence Bishnoi.  Investigators confirmed that the extortion victim was threatened by LBG leader Lawrence Bishnoi because the extortion victim conducted an audio call with Lawrence Bishnoi.  During the call, Lawrence verified his identify by turning on the video function for the call.  The victim took screen shots of that portion of the call which confirmed that Lawrence Bishnoi was the person behind the extortionate threats.  Investigators believe Lawrence Bishnoi is able to gain access to contraband cellphones and oversee the criminal activities of LBG despite Indian authorities placing him in a form of custodial confinement.

6.     The FBI has also obtained numerous police reports from Indian law enforcement which have identified U.S.-based LBG members and associates who have extortion schemes targeting victims who live in India.  The U.S.-based LBG members use encrypted applications such as Whatsapp and Signal in order to communicate their threats and demands to India-based victims.  If the victims do not pay, LBG members and associates arrange to have members in India conduct shootings of the victims, their associates, their residences, and their businesses.

7.     The present investigation of **Singh** started with information provided to the FBI by the Royal Canadian Mounted Police (RCMP) of Canada.  According to the RCMP, **Singh** made threats to kill Victim 1 over WhatsApp audio and video calls on May 27, 2024.  At the time of the threatening communications, Victim 1 lived in Canada while **Singh** lived in the Eastern District of California.  As detailed below, a November 2023 recorded threat made to Victim 1 links the later threats in May 2024 directed at Victim 1 to members and associates of the LBG being angry at Victim 1 for cooperating with

Indian law enforcement and causing the arrest of two suspected members or associates of the LBG.

A.    **Threats Against Victim 1 by Singh**

8.    According to RCMP reports, in approximately July 2022, Victim 1, who was in India at the time, was befriended by a female, J.K.  J.K. and her associate, L.S., whose real name is S.S., blackmailed Victim 1 by threatening to make rape allegations if Victim 1 did not pay them 2 crore rupees (over $239,000).  Victim 1 refused to pay and later received a phone call from local Indian police asking Victim 1 about the allegations.  Victim 1 showed messages from J.K. and S.S. to prove his/her innocence.  Indian police requested that Victim 1 arrange to meet with his/her blackmailers with a promise of payment.  Victim 1 agreed to assist Indian law enforcement and arranged to meet his/her blackmailers.  As a result of this meeting, Indian authorities arrested J.K. and S.S.  After the arrests, Victim 1 began receiving threats in India.  In January 2024, Victim 1 relocated to Canada.  Victim 1 kept his/her Indian phone number, which is the number **Singh** called to make threats to kill Victim 1.

9.    On May 27, 2024, Indian officials brought charges in court against J.K. and S.S. in the extortion case involving Victim 1.  On the same day, Victim 1 received multiple communications from WhatsApp[1] phone using the number 351-926-399-371 starting at 3:46 a.m. (all times in this affidavit are in the time zone where Victim 1 resided, Pacific Savings Time or PST).  Subsequent investigation by Canadian law enforcement revealed that the WhatsApp account was created on May 27, 2024, at 3:32 a.m., just 14 minutes before the first call with Victim 1 at 3:46 a.m.  By way of summary, the caller

---

[1] WhatsApp is a widely used messaging application owned by Meta Platforms, Inc. It is available for use on smartphones, tablets, and desktop devices and allows individuals to communicate through various formats, including text messages, voice calls, video calls, and the sharing of multimedia files such as images, documents, and videos. WhatsApp operates using an internet connection—either Wi-Fi or cellular data—and enables users to connect with others who also have the application installed, regardless of geographic location.

The platform offers end-to-end encryption by default, meaning that messages and calls are secured and can only be read or heard by the intended recipients. Users can engage in one-on-one conversations or participate in group chats. In addition to traditional text messaging, WhatsApp includes voice messaging, real-time voice calls, and video calls, which allow users to speak or see each other live through the app. These features are accessed through the application's interface, which requires users to have an active phone number for registration and verification. All communication occurs over the internet, rather than traditional SMS or cellular networks, making WhatsApp a preferred platform for both domestic and international communication.

identified himself as "Lucky Horshiarpur,"[2] who agents later identified as **Singh**.  **Singh** made threats to Victim 1 based upon Victim 1's cooperation with law enforcement in the blackmail case in India.  The majority of the conversation between **Singh** and Victim 1 on May 27, were conducted in Punjabi, with some words in English.  Your affiant will detail specific statements made by **Singh** in one recorded video call, a photo of Victim 1's vehicle sent by **Singh**, and two preserved voice messages.  There were other calls made by **Singh** which, although not recorded, Victim 1 alleged contained similar threatening statements by **Singh.**  In order to provide context of all calls made by **Singh**, the below chart is included to detail all communications from **Singh** which occurred on May 27, 2024.  There were no calls made by **Singh** to Victim 1 outside of this date.  The RCMP obtained information corroborating Victim 1's account of these communications from Victim 1's phone.

| **Session #** | **Date** | **Time** | **Duration (mins)** | **Type** | **Recorded or preserved?** |
|---|---|---|---|---|---|
| 1 | 5/27/2024 | 03:46 hrs | 5 mins | Voice Call | No |
| 2 | 5/27/2024 | 03:55 hrs | 2 mins | Voice Call | No |
| 3 | 5/27/2024 | 03:58 hrs | 6 mins | Video Call | **Yes** |
| 4 to 6 | 5/27/2024 | 17:10-17:11 hrs | 3 Missed Video Calls | Video Call | No |
| 7 | 5/27/2024 | 17:12 hrs | 24 seconds | Voice Message | **Yes** |
| 8 | 5/27/2024 | 17:12 hrs | N/A | Photo | **Yes** |
| 9 | 5/27/2024 | 17:13 hrs | 24 seconds | Voice Message | **Yes** |
| 10 | 5/27/2024 | 17:55 hrs | Missed Voice Call | Voice Call | No |

May 27, 2024, 3:58 a.m. – recorded video call with **Singh**

10.    The third call between **Singh** and Victim 1 occurred on May 27, 2024, at 3:58 a.m.  It was a recorded call that lasted for six minutes.  The call was made in Punjabi with some words spoken in English.  Near the end of the call, **Singh** turned on the video function, which showed his face to

---

[2] Based on my discussions with Indian colleagues, I know that Hoshiarpur is a region in India and in the Indian culture it is common to identify oneself with one's first name and the region they are from.  As such, I believe this Lucky is from the Horshiarpur region of India.  During a subsequent interview with **Singh**, he identified that he was from Hoshiarpur.

Victim 1.  Subsequent excerpts of this call, and other calls, used by your affiant in this affidavit were translated and transcribed by the RCMP.

11.    During the third call between **Singh** and Victim 1 on May 27, **Singh** said he was calling from "*America.*"[3]  **Singh** did not demand any money during the call.  Instead, he threatened Victim 1 with bodily harm.  Specifically, **Singh** told Victim 1 that Victim 1 would be killed because of his/her cooperation with law enforcement against **Singh's** associates**.**  In this call, **Singh** started off discussing "applications" which Victim 1 submitted.  I know, based on my training and experience, and my conversations with a fellow special agent familiar with Indian law enforcement, that "applications" are another term for complaints to law enforcement.  In this instance, **Singh** was referring to applications "against [S.S.] and [Y.C.]"[4]."  Based on my training and experience, I believe that **Singh's** call was made based upon **Singh's** belief Victim 1 cooperated with law enforcement in India against **Singh's** associates, S.S. and Y.C.

12.    Later in the same call, **Singh** threatened Victim 1 stating, "You're going to die, sister fucker.  Will kill your today or kill you tomorrow."  In this part of the call, I believe that **Singh** was expressly conveying a threat to kill Victim 1 and he intended to create fear in the mind of Victim 1 that Victim 1 would be killed.

13.    Later in the same call, **Singh** and Victim 1 had the exchange below which demonstrates why **Singh (**designated as "JS") was calling Victim 1 (designated as "V1").  The below is an RCMP translation of the recording provided by Victim 1.

> JS:    Will you, sister fucker, survive after giving applications against our brothers?
>
> V1:    No, who have you called behind? Behind [Y.C.] or behind [S.S.], sir?
>
> JS:    Friend, look, [Y.C.] – suh (ph) – its behind [S.S.], right? And [Y.C.] is our
>
>          brother.  Okay? Whether we do it behind [Y.C.]or behind [S.S.], it's the …

---

[3] Your affiant is keeping italicized words in the transcriptions as these formatting measures were made by the RCMP to designate translated transcripts which are not italicized from non-translated transcripts which are italicized.  In other words, italicized transcriptions designate words spoken in the English language while non-italicized transcripts designate words spoken in Punjabi.  In this instance, **Jasmeet** mentioned "*America*" which was italicized in order to designate that **Singh** said this in English.

[4] It is unclear Y.C.'s role in the blackmail scheme involving J.K. and S.S.  Based on **Singh's** statements, it appears that both S.S. and Y.C. are associates of **Singh's** and that **Singh** believed that Victim 1 had cooperated with law enforcement against both S.S. and Y.C.

V1:    Bro

JS:    …same thing.

Based on my training and experience, I believe that the "applications against our brothers" is **Singh** saying that he believed that Victim 1 cooperated with Indian authorities against S.S. and Y.C.  Victim 1 asked for clarification for who **Singh** was calling on behalf of whether **Singh's** issue with Victim 1 was in response to Victim 1's cooperation incriminating "[Y.C.]" or "[S.S.]".  **Singh** responded that "it's the…same thing" which indicates that **Singh** was making threats in response to the entire case involving **Singh's** "brothers" or associates.

14.    Later in the same call, **Singh** continued his threats, stating, "We are going to kill you. Phoned you to tell you."  Based on my training and experience, I believe that the entire purpose of **Singh's** call to Victim 1 was to intimidate Victim 1 by threatening to kill Victim 1.  Indeed, **Singh** explicitly states that the purpose of the call was to tell Victim 1 about his plans to kill Victim 1.

15.    Later in the same call, **Singh** told Victim 1 the color and make of the vehicle that Victim 1 drives, stating "…do you not roam around in a white *Range Rover* over there?"  **Singh** even hinted to Victim 1 that he (**Singh**) knew the vehicle's license plate.  I believe the statements about the vehicle and its plate were made to bolster and legitimize **Singh's** claim to be able to harm Victim 1 and make it more credible by being specific about **Singh's** knowledge and awareness of Victim 1's vehicle.  As detailed below, later that same day, **Singh** reinforced his threats (and his ability to carry them out) by sending Victim 1 a photo of Victim 1's vehicle parked across the street from Victim 1's residence.

16.    Later in the same call, **Singh** intimidated Victim 1 by stating that he (**Singh**) knew small details of Victim 1, "I'll even tell your time and stuff.  What *plaza* you go to, at what *time*.  The *coffees* you drink, right, sister fuckers, by going, going there."  Based on my training and experience, I believe that **Singh** specifically mentions knowing the time, places, and even the type of coffee drinks that Victim 1 consumes in order to demonstrate that **Singh** has been gathering intelligence on Victim 1's patterns of life.  I believe the purpose of revealing such intimate knowledge of Victim 1 was to show that **Singh** was serious about his threats, had knowledge of Victim 1's patterns of life, and therefore could credibly carry out his threat to kill Victim 1.

17.     Later in the same call, **Singh** told Victim 1 that "…you're going to die in *Canada*.  I won't even leave you capable of going to *India*."  Based on my training and experience, I believe that **Singh** threatened Victim 1 in this part of the call by explaining that Victim 1 would be killed in Canada and would no longer be able to go to India.

18.     Near the end of this video call, **Singh** showed his face to Victim 1 in the video call.  Victim 1 was able to capture a screenshot of that video showing **Singh's** face.  This image of the caller was later used by investigators to positively identify the subject making the threats to Victim 1 as **Singh.**



*Figure 1: Left: screen capture of Victim 1's WhatsApp video call on May 27, 2024, showing Singh; Right: Singh's California DMV photo.*

May 27, 2024, 5:12 p.m. – Voice Message

19.     Later in the day on May 27, at 5:12 p.m., **Singh** sent Victim 1 a voice message with a 24 second duration.  Below is a translation transcript of that call provided by the RCMP:

> Now sister-fucker, you're not answering your father's call.  Sister-fucker, run wherever you want to run to.  We're going to kill you anyways.  Go complain to whoever you want to complain to, go complain over there too. We'll kill you over there too.  No matter where to run to, sister-fucker we have set a trap, don't you worry.  Sister-fucker, you have your car parked outside your house, right?  I'm giving you a warning, we are there as well. Run to wherever- (audio cuts off).

20.     Based on my training and experience, I believe that **Singh** sent this voice message to threaten and scare Victim 1.  **Singh** stated that even if Victim 1 were to "run," "We're going to kill you anyways."  **Singh's** threat is that Victim 1 could not elude **Singh**.  It is important to note that **Singh** stated that "we're going to kill you," which indicates to Victim 1 that it is not just **Singh** but multiple associates of **Singh's** who would kill Victim 1.  **Singh** again states that he knows Victim 1's vehicle and residence.

1       May 27, 2024, 5:12 PM, Photo Sent By **Singh**

2       21.    On May 27, at 5:12 p.m., **Singh** sent a photo through WhatsApp to Victim 1.  Victim 1

3    recognized the image to be a photo of Victim 1's vehicle.  When Victim 1 reported the threats to the

4    RCMP, Victim 1 provided the photo to the RCMP.  Consistent with Victim 1's account of the call with

5    **Singh**, Canadian investigators verified that Victim 1's phone contained a WhatsApp communication

6    from **Singh** that included a photograph of Victim 1's vehicle parked outside of his residence.

7    Investigators in Canada reviewed the photo and concluded that the photo was recent based upon the

8    foliage of the trees in the photo.  The RCMP would later share screenshots from Victim 1's phone with

9    your affiant to verify the claims made by Victim 1 about threats made against him/her.  Based on my

10   training and experience, I believe **Singh** sent this photo to reinforce that the threat he was making to

11   Victim 1 was backed up by the ability to carry out the threat.  In particular, the photo is circumstantial

12   proof that, although **Singh** said he was in the United States, **Singh** has associates in Canada who were

13   able to obtain a photo of Victim 1's vehicle.

14       May 27, 2024, 5:13 p.m. – Voice Message

15       22.    On May 27, at 5:13 p.m., **Singh** sent Victim 1 a voice message that lasted 24 seconds.

16   Below is a translation transcript of that call provided by the RCMP:

17
         Look, that's your car right?  Sister-fucker, live there, no matter where you live,
18       you're going to die anyways.  If we don't kill you today, we'll kill you in a week,
         get yourself ready.  Sister-fucker, what do you think, just because you're there,
19       your parents still live in Model Town.  I am not going to spare them either,
         sister-fucker.  Go make as many complaints as you want, you pussy.  You act
20       like you're all about the police, let's see if the police can save you, if they can.
         Be ready, sister-fucker.

21       23.    Based on my training and experience, I believe that this message was sent to threaten

22   Victim 1.  Just before this voice message, **Singh** sent a photo of Victim 1's vehicle.  In this voice

23   message, **Singh** is showing his knowledge and ability to harm Victim 1 by asking Victim 1, "Look,

24   that's your car right?"  This voice message verifies that **Singh** had intimate knowledge of Victim 1 and

25   supports the inference that **Singh** and his associates had the resources and personnel to conduct

26   surveillance of Victim 1 even if **Singh** was not located in Canada.  **Singh** continued threatening Victim

27   1 stating Victim 1 would be killed that day or in a week.  **Singh** also extended the threats to Victim 1's

28   family.  Victim 1's family reside in India.  Specifically, **Singh** told Victim 1 that he was not going to

"spare" Victim 1's parents.  **Singh** said the police would not be able to save Victim 1.

<u>November 2023 – Threatening Call Received by Victim 1</u>

24.     During the RCMP's interview of Victim 1, Victim 1 provided recordings of another threatening call which Victim 1 received in November 2023 while Victim 1 was in India.  The threatening call was made from WhatsApp phone (267) 837-7068, a number used by an unknown subject (hereafter "UNSUB").  Although **Singh** was not identified as a party in this call and the call did not occur with the Victim in the United States, your affiant is detailing this call because it demonstrates that 1) the basis of the threatening calls (in November 2023 and May 27, 2024) were made as a result of Victim 1's cooperation with law enforcement; and 2) these threats made by **Singh** and the UNSUB referenced a group of individuals, "us," who would be carrying out the murder of Victim 1.  The UNSUB specifically lists the "us" as the LBG in November 2023.  Although **Singh** did not directly mention LBG in his calls on May 27, 2024, I believe the similar threats for Victim 1's cooperation with law enforcement in both calls likely indicate that the calls to Victim 1 were connected with his (**Singh**'s) association with LBG.

25.     In the November 2023 call, UNSUB stated on numerous occasions that Victim 1 had "caused our brother a loss."  I believe the reason why the UNSUB was calling Victim 1 was because of some action Victim 1 had taken to harm a "brother," or associate, of the UNSUB.  In one portion of the call, the UNSUB explained that "we were going to take money from you, but you caused our brother a loss.  Now we're going to kill you."  The UNSUB provided details of why he was making these threats by explaining that the original intention was to obtain money from Victim 1.  I believe this may be reference to a blackmail attempt ("to take money from you") of Victim 1 by J.K. and S.S.  However, Victim 1 "caused our brother a loss," which I interpret as a reference to Victim 1's cooperation with law enforcement which resulted in the arrest of J.K. and S.S.  In fact, the UNSUB made clear in this call that he believed that Victim 1 had cooperated with police stating, "You went to the *police* before as well."

26.     When Victim 1 asked who or which group the UNSUB was calling on behalf of, the UNSUB responded, "Should we tell you again and again, speaking from the *Lawrence Group*."  Later in the call, the UNSUB stated that "it's the *Lawrence Group* people speaking."  Based on my training and experience, I believe that the UNSUB was stating that he was speaking on behalf of LBG.  LBG is well

known and feared among East Indians.  As such, the mere mention of the gang lends much credibility to the USNUB's threats.  I also believe that the UNSUB identifying himself as speaking on behalf of LBG likely indicates that he is, in fact, a member or associate of the LBG.  I know that anyone who claims to be speaking on behalf of a gang leader, such as Lawrence Bishnoi, who does so falsely when they are not authorized to speak in such a manner, could face serious repercussions including harm to them and their families.  As such, I believe that the UNSUB was likely authorized to speak on behalf of LBG. Because the threats by UNSUB and **Singh** are to kill Victim 1 for his/her cooperation with law enforcement in the case of J.K. and S.S., I believe that **Singh's** threats which identified multiple individuals wanting to murder Victim 1 were likely a reference to members of the LBG.

27.     As a result of Victim 1 cooperating with police about J.K.'s blackmail attempt of Victim 1 and the subsequent threats Victim 1 received, Victim 1 expressed to the RCMP, "That I – I want to go to India.  How will I go there, tell me?  I have a lot of danger.  How can I go?...because I do have fear. If I go, they will kill me."  Based on my training and experience, I believe that **Singh's** threats caused Victim 1 to fear he/she will be killed.

**B.     <u>Identification of Singh as "Lucky Horshiarpur"</u>**

28.     Canadian law enforcement identified a Facebook account by the Display Name "Jasmit Singh Maan (Lucky)", Username jassmit.mann, from Hoshiarpur, India.  One of the photos from the Facebook account showed a male subject who your affiant has identified as **Singh** based on **Singh's** DMV photo.

 

*Figure 2: Left: screen capture of Victim 1's Whatsapp video call showing Singh; Right: screen capture of Facebook account for "Jasmit Singh Mann (Lucky)" showing Singh.*

C.    <u>Interview of Singh on August 29, 2024</u>

29.    On August 29, 2024, the FBI and ERO (Enforcement and Removal Operations) conducted an interview of **Singh**.  During the interview, **Singh** identified his family name as Maan which is the same[5] as that in the Facebook profile for "Lucky Horshiarpur."  **Singh** also stated he was from Raipur, District Hoshiarpur, Punjab, India.  It is important to note that District Hoshiarpur is the same district provided by "Lucky Hoshiarpur" during the Whatsapp call with Victim 1.  **Singh** provided his cell phone as (559) 816-1053 (hereafter "**Singh's** Phone").  **Singh** told agents that he owned a white Lexus (hereafter "**Singh's** Vehicle") which is registered to an address, 2821 E. Spruce St, Apt 253, Fresno, California.

30.    At the time of the interview, **Singh's** address of record with ERO was 10018 Denali Ln, Stockton, California 95219 (the "Stockton Residence").  **Singh** confirmed during the interview that he was, at that time, living at his Stockton Residence.  This was also the address he had first provided to ERO on September 4, 2023.  During the interview, **Singh** advised that he was planning on moving to Fresno providing that new address as 2821 E Spruce Ave #253, Fresno, CA 93720 (the "Fresno Residence").  Although **Singh** provided his Stockton Residence as his address, I believe that he was actually residing at his Fresno Residence at this time because I reviewed cell phone data that placed him in and around Fresno during the time period that he claimed he was staying at his Stockton Residence.[6] In either case, **Singh** has made statements admitting that he has only resided in the Eastern District of California.

31.    During the interview, agents took a photo of **Singh**.  Based on the photo, I believe that **Singh** is "Lucky Horshiarpur" who threatened Victim 1 on May 27, 2024, because they appear to be the same person, as demonstrated below.

---

[5] **Singh's** Facebook profile has the name spelled as "Mann."  Based upon my training and experience, I know that this Indian surname is often spelled both as Mann or Maan.

[6] Your affiant obtained cellular site records associated with **Singh's** phone, (559) 816-1053, which show that he was residing in the Fresno area around and including the date of the calls to Victim 1 on May 27, 2024.



*FIGURE 3: Left: screen capture of Victim 1's WhatsApp video call showing Singh; Right: photo of Singh captured during his August 29, 2024, interview with the FBI and ERO.*

**Singh** remains in ICE custody as of the signing of this complaint.

**D.**    **Singh made the threatening communications from the Eastern District of California on May 27, 2024**

32.    ERO provided the FBI with information from ERO's records of **Singh's** immigration status indicating that **Singh** entered the U.S. and was encountered by Customs and Border Protection (CBP) on April 6, 2023.  ERO did not have any record of **Singh** exiting the country since his entry into the U.S.  As such, I believe that **Singh** was in the United States during the May 27, 2024, communication with Victim 1 (consistent with his cellphone data from the same time).

33.    I further believe that **Singh** was residing in the Eastern District of California since the time that he entered the United States based upon money transfers (such as Western Union) conducted by **Singh**.  In particular, queries based on **Singh's** phone, (559) 816-1053, revealed five money transfers associated with this phone number between September 2023 and August 2024.  All five showed **Singh** to be a party in the money transfers with three of the money transfers listing **Singh** as the sender while two of the money transfers listing **Singh** as the payee.  All five money transfers show **Singh** provided his address as the Stockton Residence.  The money transfers also showed the physical address of the money transfer business where **Singh** conducted the money transfers.  Four of those locations were located in the Eastern District of California with one located in the Central District of California.  Below are spreadsheets showing these transactions:

| Send Date Time | Sender Name | Sender Address | Sender Phone | Send Agent City & State |
|---|---|---|---|---|
| 9/2/2023 19:48 | JASMEET SINGH | Singh's Stockton Address | (559) 816-1053 | BUENA PARK, CA |
| 9/19/2023 17:21 | JASMEET SINGH | Singh's Stockton Address | (559) 816-1053 | MANTECA, CA |
| 2/27/2024 5:28 | JASMEET SINGH | Singh's Stockton Address | (559) 816-1053 | MANTECA, CA |

| Pay Date Time | Payee Name | Payee Address | Payee Phone | Pay Agent City & State |
|---|---|---|---|---|
| 8/6/2024 17:25 | JASMEET SINGH | Singh's Stockton Address | (559) 816-1053 | CLOVIS, CA |
| 8/11/2024 22:56 | JASMEET SINGH | Singh's Stockton Address | (559) 816-1053 | FRESNO, CA |

34.      Based on the money transfer records and my training and experience, I believe that **Singh's** conducting of four of these transactions in the Eastern District of California likely indicates that he was residing in the Eastern District of California from September 2023 to August 2024.

35.      As discussed, on September 4, 2023, **Singh** provided his address of record with ERO as the Stockton Residence.  Although this was the address provided, I believe that **Singh** was residing at the Fresno Residence which is also located in the Eastern District of California during the calls with Victim 1 on May 27, 2024.  I believe this because your affiant obtained cellular records for **Singh's** phone, (559) 816-1053.  The records show **Singh's** phone to have been active as far back as April 30, 2023.  The records showed that from May 20, 2024, to May 31, 2024, during a twelve-day period covering the threatening calls to Victim 1 on May 27, 2024, **Singh's** phone, based on cell site locations, was located exclusively in the Central Valley – primarily in Fresno and Clovis but also in the cities of Modesto, Stockton, Lodi, and Bakersfield.[7]  Most importantly, on the date of the extortion calls to Victim 1, May 27, 2024, **Singh's** phone showed it located only in the Eastern District of California with no travel outside.

36.      Based on the above information, your affiant believes there is probable cause to believe that **Singh** was in the Eastern District of California on May 27, 2024, during the threatening communications with Victim 1.

---

[7]  During that time period, Jasmeet's phone showed that it traveled to Monterey, California, on May 23, 2024.  Other than this trip, Jasmeet's phone was located exclusively in the Eastern District of California.

## IV.     <u>CONCLUSION</u>

37.     I respectfully submit that this affidavit establishes probable cause that, on or about May 27, 2024, at approximately 3:58 a.m., within the Eastern District of California, defendant **Singh**, violated 18 U.S.C. § 875(c) by transmitting in interstate or foreign commerce a "communication" containing a threat to injure and kill the person of Victim 1, by making oral threats over the Whatsapp application through an audio and video call.  Based upon that probable cause, respectfully request that a Criminal Complaint be issued against **Singh** for this violation and an arrest warrant be issued for **Singh** based upon that Criminal Complaint.

## V.    **REQUEST FOR SEALING**

38.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this complaint, including the affidavit.  I believe that sealing these documents is necessary because not all of the targets of this investigation are aware of this investigation at this time.  Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

/s/ Brian Toy
_____
Brian Toy
Special Agent
FBI

Subscribed and sworn to me via telephone on:    November 26, 2025

_____
Hon. Jeremy D. Peterson
U.S. MAGISTRATE JUDGE

/s/ Adrian T. Kinsella
_____
Approved as to form by AUSA ADRIAN T. KINSELLA

**<u>United States v. Jasmeet Singh</u>**
**Penalties for Criminal Complaint**

VIOLATION:          18 U.S.C. § 875(c) – Interstate Communications of Violent Threats

PENALTIES:          A maximum of up to 5 years in prison;
                    A fine of up to $250,000;
                    A term of supervised release of 3 years (18 U.S.C. 3583(b)(2));
                    Restitution;
                    Special Assessment: $100 (18 U.S.C. § 3013)